NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1170

COMMONWEALTH

vs.

PHARLY JOSEPH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial, a District Court judge found the defendant guilty of one count of assault and battery on a pregnant victim. The defendant appeals, arguing that improprieties in the prosecutor's opening and closing remarks resulted in a substantial risk of a miscarriage of justice. We affirm.

Background. In February 2019, the defendant was driving the victim to work when the two began to argue. At the time, the victim was pregnant with the defendant's child. The victim testified that the argument eventually escalated, culminating in the defendant slapping the victim in the face.[1] The victim and the defendant both testified that they completed the remainder

---

[1] The defendant also testified and denied having slapped the victim.

of the trip without incident.  The victim then worked about half of her shift before leaving early because she was experiencing light sensitivity.  After leaving work, the victim went to the police station to report her earlier altercation with the defendant.  The defendant was arrested soon thereafter.

A bench trial was held in May 2019.  The Commonwealth's opening statement was brief, consisting entirely of the following:

> "The alleged victim . . . is here.  I would just let the Court know that she has indicated to the Commonwealth that she didn't wish to proceed in this matter, but the Commonwealth is stepping in and prosecuting the case on her behalf.  Thank you."

Each side then presented one witness, with the victim testifying for the Commonwealth, and the defendant testifying on his own behalf.  During her closing, the prosecutor again mentioned the victim's reluctance to testify, as follows:  "I would suggest that she was calm, didn't want to be here, as I suggested earlier to Your Honor, answered every question as best she could."  The defendant did not object to the opening or closing statements.  The judge found the defendant guilty, commenting in the process that "credibility [wa]s the issue" and that he found the victim's "testimony [to be] credible."

Discussion.  The defendant argues on appeal that the prosecutor's remarks were improper, because she:  (1) stated matters that would not be and were not introduced in evidence,

2

(2) improperly vouched for the victim's credibility, and (3) wrongly appealed to the judge's sympathy.  Because the defendant did not object, we review for a substantial risk of a miscarriage of justice.  Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

The prosecutor's opening statement did not create a substantial risk of a miscarriage of justice.  To begin, opening statements "may reference anything that [a prosecutor] reasonably believes in good faith will be proved by evidence introduced" at trial.  Commonwealth v. DePina, 476 Mass. 614, 627 (2017).  Here, the prosecutor reasonably could have expected the victim's reluctance to testify to be elicited at trial, either through testimony or through her demeanor on the stand.  Indeed, the prosecutor may have anticipated the need for a hostile witness determination and leeway from the judge.  The defendant points to nothing in the record indicating that the prosecutor lacked such a good faith belief.  Moreover, "questions regarding a witness's fear of testifying . . . are allowable in the judge's discretion."  Commonwealth v. Auguste, 418 Mass. 643, 647 (1994).

Even if there were error, however, we are convinced that no substantial risk of a miscarriage of justice resulted for two reasons.  First, absent a contrary indication, we presume that the judge understood that "opening . . . statements are not

3

evidence," Commonwealth v. Silanskas, 433 Mass. 678, 691 (2001), accurately instructed himself on that point, and did not improperly consider the statement as evidence. See Commonwealth v. Batista, 53 Mass. App. Ct. 642, 648 (2002). See also Commonwealth v. Johnson, 463 Mass. 95, 114 (2012) (instructions can neutralize prejudice). And second, the defendant's failure to object is an indication "that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." Commonwealth v. Lyons, 426 Mass. 466, 471 (1998), quoting Commonwealth v. Mello, 420 Mass. 375, 380 (1995).

For similar reasons, the prosecutor's closing did not give rise to a substantial risk of a miscarriage of justice. Although "closing arguments must be limited to facts in evidence and the fair inferences that may be drawn from those facts," Commonwealth v. Rutherford, 476 Mass. 639, 643 (2017), prosecutors "may argue in support of the credibility of witnesses based on their demeanor." Commonwealth v. Miles, 46 Mass. App. Ct. 216, 222 (1999). Here, the context of the prosecutor's closing remarks was that she was commenting on the victim's demeanor -- the victim was "calm, didn't want to be here." Such argument was appropriate, in the assessment of the witness's overall credibility. Even the cold record reflects that the victim's hesitance was apparent, as evidenced by the

4

judge allowing the prosecutor leeway to ask the victim leading questions.  See Commonwealth v. White, 2 Mass. App. Ct. 258, 262 (1974) (judges may permit leading questions of hostile witnesses).  Cf. Commonwealth v. Jones, 319 Mass. 228, 230 (1946) (hostility is "largely a matter of observation, and does not lend itself readily to reproduction in the printed record").  Regardless, even if improper, we are convinced that the closing did not result in a substantial risk of a miscarriage of justice for the same reasons discussed supra.  The defendant did not object, and there is no indication that the judge failed to accurately instruct himself, or to follow the law concerning the role of closing arguments.  See Lyons, 426 Mass. at 471; Commonwealth v. Beaulieu, 3 Mass. App. Ct. 786, 787 (1975).

What we have said above is sufficient to dispose of the defendant's arguments, but we note as well that the prosecutor's remarks did not qualify as improper vouching for the victim's credibility or appealing to the judge's sympathy.  First, the defendant does not explain how statements about the victim's reluctance to testify could have impermissibly bolstered the victim's credibility.  A hesitancy to testify could just as easily lead to a negative inference of credibility -- that is, that the victim was not willing to repeat prior statements under oath.  Second, the prosecutor did not expressly "urge the [judge] to decide based on sympathy toward the victim," nor do

we see anything in the record indicating that this was the prosecutor's intent. <u>Commonwealth</u> v. <u>Rodriguez</u>, 100 Mass. App. Ct. 663, 669 (2022). The prosecutor's remarks did not result in a substantial risk of a miscarriage of justice.

<u>Judgment affirmed</u>.

By the Court (Wolohojian, Englander & D'Angelo, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered: February 15, 2023.

---

[2] The panelists are listed in order of seniority.